UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JENNIFER BATTEN,

                    Plaintiff,

    v.

GLOBAL CONTACT SERVICES, LLC and
DAVID KEYES, *Individually*,

                    Defendants.
---------------------------------------------------------------x

**OPINION AND ORDER**

15-CV-2382 (NG) (SJB)

**GERSHON, United States District Judge:**

Plaintiff Jennifer Batten brings this action against her former employer Global Contact Services, LLC ("GCS") and her former supervisor David Keyes ("Keyes"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 *et seq.*, alleging a sexually hostile work environment, retaliation, and constructive discharge. Defendants now move for summary judgment on all of plaintiff's claims. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## STATEMENT OF FACTS

The following facts are either undisputed or drawn from evidence supporting plaintiff's version of events. Batten began working for defendant GCS as a Customer Service Associate in the Travel Services Department on or about December 2, 2013. GCS maintains an Access-A-Ride call center where it employs approximately 600 employees. Batten's duties included answering customer calls and arranging appointments for customers to be picked up by the Access-A-Ride service. Defendant Keyes, a Customer Care Team Leader in the Travel Services Department, supervised Batten from approximately May 2014 through at least November 18, 2014. Prior to

November 18, 2014, Batten and Keyes had a "civil" working relationship that, while shy of "friendly," included occasional joking with one another. Keyes often referred to Batten and other female GCS employees as "sunshine," a term that Batten did not find offensive. Batten and Keyes had never had any physical contact, nor any communication outside of work.

### *The November 18, 2014 Incident*

On the morning of November 18, 2014, Batten was seated at her cubicle, on the phone with a customer via headset. After passing in front of Batten's desk, Keyes circled around the short cubicle wall surrounding it and entered her cubicle from behind her. He then hugged Batten from behind while she remained seated in her chair. Batten "never saw him coming [and] only just felt something." (Batten Dep. at 126:13–17.) She felt "someone touch [her] on [her] back, like a press and slow motion of . . . a squeeze and a hug." (*Id.* at 127:2–5.) Defendant Keyes locked his arms around Batten's body "underneath [her] breast and lifted [her] and squeezed." (*Id.* at 151:19–20.) The hug lasted for more than ten seconds, during which Keyes' cheek pressed against hers, his chin over her shoulder. (*Id.* at 152:2–7; 244:12–17.) Keyes' forearms made contact with Batten's breasts, but he did not grab her breasts with his hands. (*Id.* at 244:9–11.) In response to Keyes' hug, plaintiff turned around and stood up. Another GCS employee witnessed the hug and shouted, "David, I saw you." (*Id.* at 129:17.) Keyes responded that the hug was "just to say hi," and then walked away. (*Id.* at 126:21–129:22.)

### *The Aftermath of the November 18, 2014 Incident*

Later that day, Batten complained to the GCS Human Resources department ("H.R."). She told Sharon Shirley-Brown, the H.R. Director, that she had had an "incident" with another GCS employee, but refused to provide any further information, including the identity of the employee or what had happened. Shirley-Brown encouraged Batten to give her further information so that

she could handle her report appropriately. Following this conversation with Ms. Brown, Batten fell into crying fits, unable to "get [herself] together." (Batten Dep. at 144:15–25.) She called her mother from the bathroom to describe what happened. After composing herself, Batten returned to H.R., submitted a handwritten statement to Human Resources Assistant Joesan Stewart describing the incident and identifying Keyes, and proceeded to leave work for the day.

The following day, Batten spoke with Frank Camp, the Center Director, about the incident. Camp informed Batten that she would be hearing from Damaris Merritt, GCS' Travel Services Director, and that Merritt would make the "decision." Two days later, on November 21, Merritt called a meeting with Batten and Keyes in her office. Batten was visibly upset during this meeting, and repeatedly asked "why [Keyes] would do something like that to [her]." (Batten Dep. at 170:20–171:7.) Keyes apologized, saying that he "did not know what he was thinking" and that it was "stupid on [his] part." (*Id.* at 170:5–13.) Keyes claimed that he had thought that they had become friendly and that he had misinterpreted Batten's morning greetings of "purring" and scratching gestures at him as a sign of that friendship. Keyes was not disciplined as a result of the incident.

Aside from this meeting, Keyes' only interactions with Batten after the incident included saying "hi" to her one day as she walked to the restroom, inquiring of a colleague about Batten's whereabouts, calling her office telephone line on one occasion to speak about her schedule, and saying "Happy Thanksgiving" to everyone in the area of Batten's desk before the holiday weekend. There were "no other occasions during Batten's employment at GCS upon which Keyes sexually harassed Batten, touched her in any manner that was unwelcome, or otherwise made sexually harassing comments to her." (Pl.'s Response to Defs' R. 56.1 Stmnt. at ¶ 24.)

Nevertheless, in the weeks following the hug, the "entire environment . . . just became awkward. It was uneasy. It wasn't the same." (Batten Dep. 180:14–16.) Plaintiff felt that Director

3

Merritt was "livid" with her for complaining of the sexual harassment and that Merritt attempted to diminish the seriousness of the incident. For example, Merritt had told Batten that Keyes would no longer be her supervisor, but never actually replaced him. According to an affidavit submitted by the Human Resources Assistant, Josean Stewart, a friend of Keyes named Elton Cunningham became plaintiff's supervisor in name only. In actuality, Keyes continued to supervise Batten and retained control over her employment, with the only difference being that he was not supposed to interact with plaintiff at work. Keyes was still authorized to cause her to be written-up and/or disciplined.

On December 2, 2014, Plaintiff met with an attorney who had her execute a form entitled "Charge of Discrimination." In the section of the form which prompts the complainant to identify the "Cause of Discrimination," Plaintiff or her attorney checked only the box alleging sex discrimination. The box marked "Retaliation" was not checked. Although the form solicits "particulars," the person completing the form provided no details on it but referred the reader to an "attached statement of facts." The statement of facts, however, was not prepared until January 23, 2015, more than six weeks after Plaintiff left GCS. The statement of facts, like the charge, contains no reference to retaliation. The charge was received by the EEOC on January 29, 2015. Two months later, on March 31, 2015, the EEOC issued a Dismissal and Notice of Right to Sue letter, indicating that it had conducted an investigation and was unable to conclude from the information collected that there had been a violation of any statutes.

### *Plaintiff's Constructive Discharge*

Approximately three weeks after the incident and five days after she executed her EEOC charge with her attorney, on December 7, Batten received a Notice of Tardiness and Corrective Counseling Form. This notice indicated five "tardies," spanning from November 3 through November 14, 2014. *Id.* According to Plaintiff, four out of the five tardies listed were for being late to her shift by five minutes or less. *Id.* According to GCS' official Tardiness Policy, a fifth tardy results in "termination following a review by the human resources department." Batten refused to sign this tardiness notice, explaining that, from a prior supervisor, she understood there to be a five-minute grace period after the start of her shift during which she would not be marked late. Two days after receiving this tardiness notice Batten submitted a letter of resignation to Camp, leaving her employment at GCS. Her letter of resignation stated that:

> The work conditions and treatment following my prior complaint on November 18, 2014, has resulted in discriminating, unreasonable, and unbearable working terms. I've encountered retaliation for speaking up against David Keyes and I will not be subject to this type of work environment any longer. This work environment has left me emotionally, and mentally distressed. Based on the facts above I'm unable to continue working under such problematic work conditions.

(Decl. of Joshua P. Frank in Opp. to Defs.' Mot. ("Frank Decl.") at Ex. A.)

After receiving plaintiff's letter of resignation, GCS prepared an "Associate Termination/Resignation Form," which is dated December 9, 2014. (Frank Decl. Ex B.) The form still lists David Keyes as plaintiff's supervisor, lending further support to plaintiff's contention that GCS never transferred plaintiff to a new supervisor after she complained about Keyes's conduct.

On April 28, 2015, Plaintiff commenced this action by filing a complaint containing a Title VII hostile work environment claim and four claims alleging violations of various subsections of

5

the NYCHRL. In October 2015, Plaintiff amended her Complaint, on consent, to add a claim alleging Title VII retaliation and a claim alleging a fifth NYCHRL provision. Additionally, as discussed below, while not explicitly set forth as a legal claim, the amended complaint contains sufficient factual allegations to state a claim for constructive discharge under Title VII and the NYCHRL.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate only where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

An "extra measure of caution is merited" before summary judgment is granted in discrimination cases. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks omitted). This is because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Id.* (internal quotation marks omitted); *Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012). Caution also is warranted with respect to claims of hostile work environment, because a judge "is generally in no better position than a jury to determine when

conduct crosses the line between boorish and inappropriate behavior and actionable sexual harassment." *Schiano*, 445 F.3d at 605 (internal quotation marks omitted).

## II. <u>Hostile Work Environment</u>

Title VII provides that "[i]t shall be unlawful ... for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has interpreted this language as providing a claim for sexual harassment that constitutes a "hostile work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). To prevail against an employer on a hostile work environment claim, a Plaintiff must establish two elements. First, she must prove that a rational juror could conclude that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted); *Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994). Second, she must establish that a specific basis exists for imputing the objectionable conduct to her employer. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). The Second Circuit has held that in the context of a hostile work environment discrimination claim, summary judgment is appropriate only if it can "be concluded as a matter of law that no rational juror could view [the defendant's conduct] as ... an intolerable alteration of [the plaintiff's] working conditions." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

To establish the first element, a "plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."

*Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original). Because pervasiveness requires that the offensive behavior be "continuous and concerted" rather than merely "episodic," isolated incidents typically will not amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Nevertheless, "a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe.'" *Redd*, 678 F.3d at 166; *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace.") (internal quotation marks omitted)); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."). Furthermore, an actionable work environment must be both objectively and subjectively hostile. *Harris*, 510 U.S. at 21–23 (1993). Objective hostility must be considered under the totality of the circumstances, which include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.[1]

Here, Plaintiff rests her hostile work environment claim on one incident in which Keyes entered her cubicle and grabbed her from behind, squeezed her, and pressed his cheek to her cheek for more than ten seconds. This single incident transpired in a matter of seconds and is therefore not "continuous and concerted" enough to "be deemed pervasive." *Faragher*, 524 U.S. at 788;

---

[1] Defendants do not argue on summary judgment that plaintiff did not find the environment to be subjectively hostile. Nor could they do so successfully, as plaintiff testified that she was too upset to even report the incident at first, and called her mother, in tears, after the incident. Her testimony and her resignation letter indicate that she quit because the environment was intolerable for her. On these facts, plaintiff has established that she subjectively perceived the environment to be hostile or abusive.

*Alfano*, 294 F.3d at 374; *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Thus, to establish objective hostility, Plaintiff must establish that the incident was independently severe enough to "alter the terms and conditions of [her] employment." *Redd*, 678 F.3d at 175 (citing *Meritor*, 477 U.S. at 67).

The line between actionable harassment that discriminatorily changes a plaintiff's conditions of employment and merely mild incidents unsupportive of a viable claim is "not indistinct." *Redd*, 678 F.3d at 177.

> On one side lie complaints of sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; and obscene language or gestures . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* (quoting *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998)) (internal quotations and brackets omitted). The Second Circuit has explained that casual contact of the kind exchanged among friends, such as a "hand on the shoulder, a brief hug, or a peck on the cheek," normally will not create a hostile environment "in the absence of aggravating circumstances such as continued contact after an objection." *Id.* (quoting *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006)). Indeed, "even more intimate or more crude physical acts—a hand on the thigh, a kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe' when they occur in isolation." *Id.* However, once physical contact exceeds expectations of "friendly coworkers . . . it becomes increasingly difficult to write the conduct off as pedestrian annoyance." *Id.* In every instance, of course, actions must be judged under the totality of circumstances in order to determine whether they were so severe that they objectively altered a plaintiff's terms and conditions of employment.

Defendants argue that Keyes' hug was nothing more than "casual contact that might be expected among friends." *Redd*, 678 F.3d at 177 (quoting *Patton*, 455 F.3d at 816). I disagree with defendants' characterization of the incident, as plaintiff described it. Keyes' arms went underneath plaintiff's breasts and he lifted and squeezed her for more than ten seconds while his cheek was pressed against hers. This is not casual contact that might be expected among friendly coworkers—this is intimate contact. Plaintiff was, in essence, held in place while her supervisor pressed his cheek to hers and squeezed her body. Plaintiff was at her desk working at the time and the contact occurred without warning or any arguable consent on plaintiff's part. Plaintiff characterizes Keyes' action as a "sexually forceful grope" that "sexually violat[ed]" and "physically threaten[ed]" her. A reasonable juror could find that this conduct was both physically threatening and humiliating, and therefore that it meets the objective standard for hostile work environment claims.[2]

Having established that a jury could find that Keyes' behavior created an objectively and subjectively hostile work environment, plaintiff must still establish a basis for imputing his conduct to GCS. When a supervisor harasses a subordinate, the objectionable conduct is automatically imputed to the employer for purposes of a hostile work environment claim. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). Defendant GCS invokes the *Ellerth/Faragher* defense, which allows an employer to avoid liability for an employee's actions if it can show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take

---

[2] Defendants also argue that there is no evidence that Keyes's "hug" was motivated by plaintiff's sex. This argument does not merit serious discussion. At his deposition, Keyes admitted that although he has hugged men at his workplace, he has not hugged any man from behind in the manner in which he grabbed the plaintiff. While Keyes is free to argue otherwise at trial, a reasonable jury using a modicum of common sense could certainly find that Keyes would not have grabbed plaintiff and squeezed her while pressing his cheek to hers if she was a man.

advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v Ellerth*, 524 US 742, 765 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998).

GCS argues that, upon receiving Batten's complaint against Keyes, it promptly informed Keyes to avoid contact with Batten, investigated the claims by speaking to both Batten and Keyes, removed Batten from Keyes's supervision, and "had Keyes apologize to Batten." (Defs.' Mem. at 11–12.) The evidence before me, however, reveals that these assertions are not the version of the facts most favorable to plaintiff. As discussed above, Keyes is still listed as plaintiff's supervisor on her termination paperwork, and there is testimony to the effect that he could still cause her to be disciplined. Moreover, the extent and purpose of the "investigation" is in dispute. Plaintiff contends that Merritt attempted to downplay the seriousness of the complaint in her meeting with Batten, saying "that's what we do, we're Spanish. We hug" and that incidents like this one happen in the world. (Batten Dep. 172:18-173:17.) Coupled with the fact that Keyes was not disciplined despite admitting to assaulting Batten, a jury could conclude that GCS did not exercise reasonable care to prevent and correct sexually harassing behavior. Defendants' motion for summary judgment on plaintiff's Title VII hostile work environment claim is therefore denied.

The standard for a hostile work environment claim under the NYCHRL is more permissive than that of Title VII, in that the activity that allegedly creates a hostile work environment need not be pervasive or severe. *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76–78 (1st Dep't 2009). Given that the Title VII hostile work environment claim survives summary judgment, the even more permissive NYCHRL claim obviously does as well. Defendants' motion to dismiss plaintiff's hostile work environment claim under the NYCHRL is denied for the same reasons their motion to dismiss her Title VII claim is denied.

*III.    Title VII Retaliation Claim*

Title VII prohibits employers from retaliating against employees for opposing discriminatory acts otherwise prohibited by the statute. 42 U.S.C. § 2000e-3(a). For both discrimination and retaliation claims, however, a plaintiff must first exhaust administrative remedies by filing a charge with the EEOC before bringing suit under Title VII. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001). A district court can review only Title VII claims that were either explicitly included in the EEOC charge or are "reasonably related" to claims contained in the charge.³ *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam). This exception, which permits consideration of "reasonably related" claims, is "grounded in notions of fairness and the recognition that complainants generally do not have the assistance of counsel when filing EEOC charges." *Chinn v. City Univ. of N.Y. Sch. of Law at Queens Coll.*, 963 F. Supp. 218, 222 (E.D.N.Y. 1997). Failure to check the box for retaliation on the EEOC charge alone is not dispositive. *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 439 (E.D.N.Y. 2010).

A claim not explicitly raised in an EEOC charge will be considered "reasonably related" if the administrative charge gave the EEOC adequate notice to investigate the unexhausted claim. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam). Determining whether the EEOC had adequate notice "requires a fact-intensive analysis," with the "focus . . . on the factual allegations made in the [EEOC] charge itself." *Mathirampuzha v. Potter*, 548 F.3d 70, 76–

---

³ When a plaintiff has already filed an EEOC charge, the Second Circuit is "willing to assume that the exhaustion requirement is also met for a subsequent claim alleging retaliation by an employer against an employee for filing an EEOC charge." *Duplan v. City of New York*, __ F.3d __, 2018 WL 1996613, at *6 (2d Cir. Apr. 30, 2018) (internal citation and quotation marks omitted). Here, however, the EEOC charge was not filed until after plaintiff had already been constructively discharged, and defendants are not alleged to have retaliated against her for filing the EEOC charge.

12

77 (2d Cir. 2008) (internal quotation marks and citation omitted). There must be "some factual or legal nexus between the substance of the allegations contained in the administrative charge and the new cause of action." *O'Hara v. Mem'l Sloan-Kettering Cancer Ctr.*, 27 F. App'x 69, 70 (2d Cir. 2001) (finding retaliation claim not exhausted where plaintiff neither alleged retaliation in her EEOC charge nor pled the facts upon which she based her civil retaliation claim); *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 153 (E.D.N.Y. 2001) (finding claims not reasonably related where "[plaintiff's] Title VII retaliation claim present[ed] a new legal theory and an entirely new set of factual allegations").

In this case, Plaintiff's charge of discrimination was prepared with the assistance of a lawyer, and the box marked retaliation was not checked. Most importantly, the facts alleged in the administrative charge failed to apprise the EEOC of the possibility of a retaliation claim. *See Mathirampuzha*, 548 F.3d at 77. There is neither a "factual [n]or legal nexus" between the substance of the allegations included in her EEOC charge and her instant retaliation claim. *See O'Hara*, 27 F. App'x at 70. Indeed, Batten's EEOC charge and her retaliation claim in this suit are based on entirely distinct sets of factual allegations. Her retaliation claim is premised on the issuance of a tardiness notice mentioning her potential termination. Her EEOC charge at no point references this notice and asserts facts supportive only of her sexual harassment charge.

Plaintiff contends without elaboration that the facts asserted in paragraphs eight and nine of the EEOC charge are reasonably related to her retaliation claim. These paragraphs read as follows:

> 8. The next day, November 20, 2014, Ms. Merritt stood nearby claimant BATTEN's cubicle watching the Claimant for approximately ten minutes.
>
> 9. Later in the day, Mr. Keyes telephoned Claimant and asked her why she had taken a "late lunch." Claimant responded that she had taken lunch at the

> same time she had the prior day. Upon information and belief, Mr. Keyes sensed Claimant's uneasiness with him and asked, "What's the matter, kiddo? Lighten up. You ok? What's wrong? Cheer up." Finally, Mr. Keyes instructed Claimant to check with him regarding her daily lunch break and schedule.

(Exhibit I to Frank Decl. ¶¶ 8–9.)

These allegations were insufficient to have given the EEOC adequate notice to investigate a possible retaliation claim. Paragraph eight simply describes Merritt standing nearby Batten's cubicle, watching her for approximately ten minutes. This fact does not suggest retaliation, since standing near someone's desk is not itself indicative of any retaliatory motive. Paragraph nine of the EEOC charge is also insufficient to have triggered an EEOC investigation into retaliation. The facts alleged appear to have been included to show that GCS had failed to take appropriate action to replace Keyes as her supervisor and prevent him from interacting with her in the workplace, not to trigger an EEOC investigation into retaliation against plaintiff.

Plaintiff's EEOC complaint does not mention receiving the tardy notices, or any possible termination, or any adverse employment action taken as a result of her complaint about Keyes's conduct. In short, the EEOC charge would not reasonably have given the EEOC cause to inquire about anything beyond a hostile work environment. The "reasonably related" standard does not stretch far enough to "bridge the gap" between these allegations and the instant retaliation claim. *Mathirampuzha*, 548 F.3d at 76. I therefore grant defendants' motion for summary judgment on plaintiff's Title VII retaliation claim.

## IV. *NYCHRL Retaliation Claim*

Unlike Title VII, the NYCHRL does not require a plaintiff to exhaust her administrative remedies with respect to the retaliation claim in order to sue. Defendants nevertheless argue that they are entitled to summary judgment on this claim, because plaintiff's basis for her retaliation

14

claim—her receipt of a Notice of Tardiness and Counseling Memorandum—is merely "counseling and advising an employee" which they contend is not actionable on a retaliation claim. They also argue that plaintiff has failed to put forth evidence of a causal connection between her complaint and the tardiness warning. Both arguments fail.

First, a plaintiff alleging a NYCHRL retaliation claim "need not establish that the alleged retaliation or discrimination 'result[ed] in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment' so long as 'the retaliatory or discriminatory act [was] reasonably likely to deter a person from engaging in protected activity.'" *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 739–40 (2nd Dep't. 2013) (quoting NYCHRL § 8-107). This "assessment [should] be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). Whether or not defendants are correct that the tardiness warning itself would not suffice as a "materially adverse employment action" for purposes of Title VII, the NYCHRL explicitly rejects that standard as an element. *Id.* (quoting *Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 70–71 (2009)).

Defendants cite two cases for the proposition that counseling and advising an employee is not actionable on a NYCHRL retaliation claim—*Lumhoo v. Home Depot*, 229 F. Supp.2d 121, 150 (E.D.N.Y. 2001), and *Knight v. City of New York*, 303 F. Supp.2d 485, 497 (S.D.N.Y. 2004). (Defs.' Mem. p. 19.) *Lumhoo* does not involve the NYCHRL; the quotation defendants include in their brief is in regards to the New York *State* Human Rights Law, which follows Title VII, not the NYCHRL. Plaintiffs in *Lumhoo* did not bring a claim under the NYCHRL, presumably because the Home Depot store at which they were employed was in Valley Stream, not New York City.

*Lumhoo*, 303 F. Supp.2d at 127–28. While *Knight* does indeed say that an "adverse employment action" is required in order to have a claim under the NYCHRL, it was decided in 2004, and in 2005, the City of New York passed the Restoration Act, amending the NYCHRL to reflect that a materially adverse employment action is not required. *Brightman*, 108 A.D.3d at 739 (citing 2005 NY City Legis. Ann. at 528–35); NYCHRL 8-107. In short, defendants have pointed to no sound authority for the proposition that a plaintiff is required to show more than that the tardiness warning was reasonably likely to deter her from complaining about Keyes's actions.

A reasonable jury could find that the tardiness warning, which carried with it the threat of termination, was intended and likely to deter her from complaining about Keyes's hug. All the latenesses occurred prior to her complaint, yet nobody said anything to her about them until shortly after. Further, it can reasonably be inferred that the warning was pretextual, given that, in four out of the five instances, plaintiff was late by fewer than five minutes, and plaintiff testified that there was an unwritten policy giving employees a five-minute grace period before they were considered tardy. Viewed in this light, a jury could conclude that, shortly after her complaint, GCS started holding plaintiff strictly accountable for *de minimis* latenesses that had occurred a month prior. Given that five tardies can lead to termination, a jury could find that this would deter an employee from complaining about workplace harassment. Defendant's motion for summary judgment on plaintiff's NYCHRL retaliation claim is denied.

## V.   *Constructive Discharge*

Defendants argue that this claim was not pled in the amended complaint and was raised for the first time in a pre-motion conference letter related to this motion for summary judgment. While not specifically delineated in the amended complaint as a claim, plaintiff did plead that, "unable to withstand the irrevocably changed hostile work environment, plaintiff BATTEN was forced to

resign from GCS on December 9, 2014. Plaintiff has been subjected to such a discriminatory, hostile, and abusive work environment that no reasonable person should or could be expected to endure." Additionally, in her prayer for relief plaintiff seeks damages for the loss of her job, to which she would be entitled only on a constructive discharge theory. Combined with the other allegations in the complaint, under notice pleading standards, defendant was clearly on notice that plaintiff was claiming she had been constructively discharged.

Though not specified in the complaint, I assume that plaintiff, as with all her other claims, is alleging this claim under both Title VII and the NYCHRL. The Title VII claim fails because she did not include it in her EEOC complaint and therefore, as with her retaliation claim, she failed to exhaust her administrative remedies. *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 136–37 (2d Cir. 2000) (constructive discharge claims under Title VII must be timely exhausted with the EEOC).

Under the NYCHRL, a plaintiff can establish that she was constructively discharged by producing evidence that her working environment had been made objectively so intolerable that a reasonable person in her respective position would have felt compelled to leave. *Albunio v. City of New York*, 67 A.D.3d 407, 408 (1st Dep't. 2009) *aff'd on other grounds*, 16 N.Y.3d 472 (2011). Plaintiff meets this standard. At the time she resigned, plaintiff had been sexually assaulted by her supervisor, Keyes, her complaints had been brushed off, Keyes had not been disciplined, and, viewing the facts in the light most favorable to plaintiff, he remained her supervisor. Furthermore, after complaining, she had received a tardiness warning which could be viewed as pre-textual, and which threatened her with possible termination. Under these facts, a reasonable person could have felt compelled to resign. Defendants' motion for summary judgment on plaintiff's NYCHRL constructive discharge claim is denied.

## VI. NYCHRL Claims against Keyes

Plaintiff asserts NYCHRL claims against Keyes as an individual for hostile work environment and retaliation. The NYCHRL provides for individual liability on either a direct theory or on an "aiding and abetting" theory. Plaintiff alleges both theories against Keyes in the Amended Complaint. Defendants correctly argue that the "aiding and abetting" theory is not viable against Keyes on the hostile work environment claim because one cannot aid and abet his own conduct. *See, e.g.*, *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp.2d 349, 367–68 (S.D.N.Y. 2012). Plaintiff does not need the aiding and abetting theory, however, because Keyes can be directly liable for his own conduct. *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp.2d 305, 344 (S.D.N.Y. 2009) ("An individual defendant may also be held personally liable under the NYCHRL if he participates in the conduct giving rise to the discrimination claim."); N.Y.C. Admin. Code § 8-107(1)(a) ("It shall be an unlawful discriminatory practice: For an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment") (emphasis added). Therefore Keyes can be held directly liable for creating a hostile work environment. To the extent that the "aiding and abetting" theory is a distinct claim, I grant defendants summary judgment on such a claim.

As for Keyes's personal liability for retaliating against Batten and constructively discharging her, there remains a dispute of material fact as to Keyes's role in plaintiff's supervision and discipline after the incident. A reasonable jury could conclude that he remained plaintiff's supervisor, and therefore had at least some role in issuing the tardiness warning. If he did in fact cause the tardiness warning to issue, then he would be directly liable for retaliation. If he had some

role in it, he may be liable on an aiding and abetting theory. Defendants' motion as to both theories of liability is denied.

## VII. *Punitive Damages*

Defendants argue that there is no evidence in the record of malice or wanton and malicious conduct, and as such, plaintiff should not be permitted to seek punitive damages at trial. Plaintiff correctly points out that, under Title VII, punitive damages may be awarded where the employer engaged in a discriminatory practice or discriminatory practices with malice "or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). A jury could conclude that GCS was recklessly indifferent to plaintiff's rights when it failed to discipline Keyes, failed to remove him as her supervisor, and failed to take her complaint seriously. The standard for punitive damages under the NYCHRL is even lower and does not require a showing of malice or awareness of the violation of a protected right. *Chauca v. Abraham*, 30 N.Y.3d 325, 333 (2017). The NYCHRL punitive damages standard is "whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Id.* at 334. Defendants' motion for summary judgment as to punitive damages is denied.

# CONCLUSION

Defendants' motion for summary judgment in their favor on plaintiff's retaliation claim and her constructive discharge claim under Title VII is granted. In all other respects, defendants' motion is denied. The remaining claims are: (1) a Title VII claim for a hostile work environment against GCS; (2) a NYCHRL claim for a hostile work environment against GCS and Keyes (on a direct theory of liability only, not as an "aider and abetter"); a NYCHRL retaliation claim against GCS and Keyes; and a NYCHRL constructive discharge claim against GCS and Keyes.

The parties are directed to submit a joint pretrial order by July 20, 2018, in accordance with my individual practices. The parties are further directed to file proposed verdict sheets, requests to charge, *voir dire* questions, and any motions *in limine* by August 17, 2018. Responses to any motions *in limine* are to be filed by August 31, 2018. A final pretrial conference and trial date will be set by the Court by separate order.

**SO ORDERED.**

/s/ Nina Gershon
NINA GERSHON
United States District Court

Dated: June 21, 2018
      Brooklyn, New York